WO          IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

ESTHER HORSCHEL,                    )
                                   )
                    Plaintiff,     )
                                   )
     vs.                           )
                                   )
DEB HAALAND, Secretary of the Department )
of Interior,                       )
                                   )
                    Defendant.     )
_____)
                                   )
ESTHER HORSCHEL,                    )
                                   )
                    Plaintiff,     )          No. 4:18-cv-0006-HRH
                                   )           [Consolidated with
     vs.                           )          No. 4:19-cv-0022-HRH]
                                   )
DEB HAALAND, Secretary of the Department )
of Interior,                       )
                                   )
                    Defendant.     )
_____)


O R D E R

Defendant's Motion for Summary Judgment
on Plaintiff's Non-selection Claims

     Defendant Deb Haaland, Secretary of the Interior, moves for summary judgment on

plaintiff's 2010, 2011, and 2012 non-selection claims.[1]  This motion is opposed by plaintiff

Esther Horschel.[2]  Oral argument was requested and has been heard.

_____

     [1]Docket Nos. 118 and 131.

     [2]Docket No. 151.

-1-

## I. Facts

In 2010, plaintiff was employed by the Bureau of Land Management/Alaska Fire Service (AFS) as a seasonal fire dispatcher, which meant that she worked from early spring through early fall, after which she would be on furlough until the next fire season. Plaintiff had a classification of GS-7. Plaintiff's duty station was in Galena, Alaska.

In 2010, plaintiff applied for a full-year, non-seasonal position as a Fire Coordination Officer, which was a supervisory position. This position had a promotion potential to GS-10. Marlene Eno-Hendren was "the selecting official."[3] Eno-Hendren averred that "[t]here were two individuals on the Best Qualified list - Hilary Shook and Ms. Horschel" and that she "did not conduct interviews because [she] had worked with both of them."[4] Eno-Hendren averred that she "selected Ms. Shook" for the position because Shook "had previous supervisory experience, and Ms. Horschel did not."[5] This supervisory experience consisted of Shook being the program coordinator of a small food bank where she supervised one full-time employee, two student interns, and 150 volunteers.[6]

---

[3]Marlene Eno-Hendren Affidavit, Exhibit B at 3, Defendant's Motion for Summary Judgment, Docket No. 131.

[4]Id.

[5]Id.

[6]Deposition of Marlene Eno-Hendren at 45:11-47:17, Exhibit 35, Docket No. 153-36.

Plaintiff, however, contends that she was better qualified for the Fire Coordination Officer position because she met the 90-day on-the-line wildfire experience requirement, had several seasons of fire experience, and had assumed the duties of the position in the spring of 2010. Plaintiff contends that Shook did not meet the 90-day on-the-line wildfire experience requirement and that the records that have been produced in discovery show that Shook did not have any experience prior to 2007 that would qualify for the 90-day on-the-line wildfire experience requirement.[7]

Plaintiff avers that when she asked Eno-Hendren why she was not selected for the position, Eno-Hendren "told me that I was not hired for the position because I 'have not come out of [my] shell' and that while I was 'technically proficient' that I was 'missing the rest' and that I was a 'head down type' not the 'supervisor type.'"[8] Plaintiff also avers that Eno-Hendren told her that "I could not be hired for th[e] position because I was doing GS-9/11 level Geographic Information Specialist (GIS) work in Galena. Ms. Eno-Hendren stated that 'it would hurt the Agency to promote you because then you wouldn't be able to do the GIS work' and that she would have to hire someone else to do its GIS work for the Galena Zone."[9] Plaintiff also avers that when she questioned Eno-Hendren about the quality of Shook's work, Eno-Hendren said that "Shook did not need to get her work correct as the

---

[7]Exhibit 37, Docket No. 153-40.

[8]SEALED Esther Horschel Affidavit at 2, ¶ 4, Exhibit 16, Affidavit of Richard Sparks, Docket No. 152.

[9]Id. at 2, ¶ 5.

Fire Coordination Officer, because she would . . . only be a supervisor."[10]  Plaintiff further avers that when she questioned Eno-Hendren about the 90-day requirement, Eno-Hendren told her "that HR had qualified Ms. Shook for the position."[11]

In August 2010, plaintiff applied for a Geographic Information Systems (GIS) Specialist position, which was a full-year, non-seasonal GS 7/9/11 position.  There had been two prior recruitments for the GIS specialist position, one in October 2008 as a GS-11 and one in January 2010 as a GS 9/11.  Neither of these recruitments was successful.

The GIS position required either a bachelor's degree in a related discipline or "a combination of education and experience[.]"[12]  Plaintiff did not have a bachelor's degree but she contends that she "had done extensive GIS work for the BLM AFS. . . ."[13]  In a 2007 performance evaluation, it was noted that plaintiff "had worked with the AFS GIS office throughout the season to gain better knowledge of the GIS programs used."[14]  And, in her 2008 performance evaluation, it was noted that plaintiff had provided "maps to Interagency partners using her GIS skills."[15]  In addition, in 2008, plaintiff did a 20-day assignment as

---

[10]Id. at 2, ¶ 4.

[11]Id. at 2, ¶ 6.

[12]Exhibit 5 at 4-5, Docket No. 153-7.

[13]Plaintiff Horschel Opposition [etc.] at 2, Docket No. 151.

[14]Exhibit 1 at 24, Docket No. 153-3.

[15]Id. at 32.

-4-

a GIS specialist trainee working on the "Iron Complex" fire and it was noted that plaintiff

did "an excellent job"[16] on the assignment and that she had "the skills and personality to be

an awesome GISS."[17]  Plaintiff also did a 16-day assignment as a GIS specialist trainee

working on the "Siskiyou Complex and Blue" fires and it was noted that plaintiff "performed

very well in providing GIS products"[18] and that she "exceeded expectations for the

position."[19]  On plaintiff's 2009 performance evaluation, it was noted that plaintiff "worked

with the other dispatchers in the Galena zone showing them how to utilize GIS. . . ."[20]  Also

in 2009, plaintiff did two temporary assignments as a GIS Specialist on fires in Alaska and

was commended for her work on both assignments.[21]

Beverly Fronterhouse was the selecting official for the GIS position.[22]  Plaintiff was

one of three candidates "on the Certificate of Referrals" that Fronterhouse  "received from

Human Resources."[23]  Plaintiff was rated qualified at both the GS 9 level and the GS 7

---

[16]Exhibit 7 at 1, Docket No. 153-9.

[17]Exhibit 8 at 1, Docket No. 153-10.

[18]Exhibit 10 at 1, Docket No. 153-12.

[19]Exhibit 11 at 1, Docket No. 153-13.

[20]Exhibit 1 at 41, Docket No. 153-3.

[21]Exhibits 13 and 14, Docket Nos. 153-15 and 153-16.

[22]Beverly Fronterhouse Affidavit, Exhibit C at 3, Defendant's Motion for Summary
Judgment, Docket No. 131.

[23]Id.

level.[24]  Fronterhouse selected Daniel Griggs for the position.  Fronterhouse averred that she "based [her] decision on the interview results" from the second recruitment, "work experience in the GIS field[,] and education."[25]  Plaintiff had been interviewed during the second recruitment; Griggs had not been.  Fronterhouse explained that

> Griggs had worked for AFS on a detail in our GIS group, was a cartographic technician at the Alaska State Office dealing with maps and geography, which required similar skill sets[,] and served an internship as a GIS Specialist with the National Parks Service.  Mr. Griggs also had [a] Master's degree in Geography, graduating with a 3.38 GPA.[[26]]

Griggs was rated qualified at the GS-7 level.[27]  Prior to hiring Griggs for the GIS position, Fronterhouse had attempted to do a lateral transfer of Griggs into the position.[28]  Fronterhouse had also selected Griggs to do a 30-day detail to the GIS position in April 2010.[29]  Plaintiff had offered to do a detail to the GIS position around that same time but Fronterhouse never took plaintiff up on her offer.

---

[24]Exhibits 24 and 25, Docket Nos. 153-25 and 153-26.

[25]Fronterhouse Affidavit, Exhibit C at 3, Defendant's Motion for Summary Judgment, Docket No. 131.

[26]Id.  At other times, Fronterhouse inaccurately stated that Griggs had "a Master's Degree in GIS."  Exhibit 28 at 1, Docket No. 153-29.

[27]Exhibit 25 at 2, Docket No. 153-26.

[28]Exhibit 18 at 1, Docket No. 153-19.

[29]30(b)(6) Deposition of Beverly Fronterhouse at 32:21-23, Exhibit 21, Docket No. 153-22.

-6-

Hilary Rigby, one of the members of the interview panel for the second recruitment for the GIS position, testified that she "was impressed with" plaintiff's "interview" and that plaintiff had "nailed" her interview.[30]  Rigby also testified that "[b]ased on his performance during the detail," she did not think Griggs should have been selected for the GIS position.[31]  And, Rigby testified that after Griggs was hired, he required extensive one-on-one training in GIS functions, training that Rigby believed plaintiff would not have required.[32]  Rigby testified that Fronterhouse told her that she did not hire plaintiff for the GIS position because she did not think plaintiff would be a good "fit" for the group dynamic.[33]  Rigby raised concerns to her superiors about the fairness of the hiring of the GIS position both prior to the selection of Griggs and after his selection.

In August 2010, plaintiff contacted a BLM EEO Officer regarding her non-selection for the Fire Coordinator and GIS Specialist positions.  In addition, plaintiff "filed two appeals with the MSPB regarding the . . . hiring for the Fire Coordinator and GIS positions on January 12, 2011."[34]  These appeals were dismissed for lack of jurisdiction on March 25,

---

[30]Telephonic Deposition of Hilary Rigby at 12:24-13:2, Exhibit 29, Docket No. 153-30.

[31]Id. at 20:5-8.

[32] Id. at 27:7-28:5.

[33]Id. at 34:1-14.

[34]SEALED Horschel Affidavit at 4, ¶ 15, Exhibit 16, Sparks Affidavit, Docket No. 152.

2011.[35]  In January 2011, plaintiff began informal EEO counseling,[36] and on May 2, 2011, plaintiff filed a formal EEOC complaint, alleging that she had been discriminated against due to her race, color, sex, national origin, and physical and mental disability and in reprisal for her prior protected activity.[37]

In the spring of 2011, plaintiff applied for a 120-day temporary detail for an Intelligence Officer position.  Plaintiff was not selected for this detail. David Curry was the selecting official.[38]  Cheryl Van Der Horn was selected for the detail because Curry "considered her the best qualified and the best fit for our office."[39]  Curry explained that both Van Der Horn and plaintiff were qualified for the detail but "having interacted with both candidates on numerous occasions over a period of at least 2 years, I felt Ms. [Van Der Horn] displayed stronger communication skills, which is an important factor for work in this field."[40]  Plaintiff, however, points out that Van Der Horn had been reduced in grade from GS-8 to GS-5 in 2009.[41]  Plaintiff also points out that Van Der Horn was given a temporary

---

[35]Id. at 4, ¶ 17.

[36]Id. at 4, ¶ 16.

[37]Exhibit 39, Docket No. 153-44.

[38]David Curry Affidavit, Exhibit 63 at 2, Docket No. 153-71.

[39]Id.

[40]Id.

[41]Exhibit 64A at 1-4, Docket No. 153-73.

-8-

promotion to GS-9 during her detail,[42] even though when plaintiff received a similar detail in 2012, she was only paid at a GS-7 rate.

In October 2011, plaintiff applied for two vacant Legal Instrument Examiner (LIE) positions, which were year-round, non-seasonal positions. Plaintiff was not interviewed for either position. Jenekia Ross was the selecting official for these positions.[43] One of the LIE positions was advertised and hired under a Delegated Examining Authority (DEU) process and the other position was advertised and hired under the Merit System process.[44] Plaintiff was rated qualified for both positions but was only referred as an eligible candidate for the Merit System position because referrals for the DEU position were limited to qualified veterans.[45] Russell Hawkins, a retired Army First Sergeant, was selected for the Merit System position. There is no evidence in the record from Ross as to why plaintiff was not interviewed or why Ross selected Hawkins. David Grasso, a disabled veteran with no prior federal civilian work experience, was hired for the DEU position. There is no evidence in the record as to why Grasso was selected. Plaintiff contends that her qualifications were superior to those of both Hawkins and Grasso given that she had "direct experience successfully performing the job duties of the position for 8 weeks during 2011 and her

---

[42]Exhibit 65 at 3, Docket No. 153-74.

[43]Karen Deatherage Affidavit, Exhibit FF at 2, Defendant's Motion for Summary Judgment, Docket No. 131.

[44]Affidavit of Melinda Asher, Exhibit 112 at 2, Docket No. 154-12.

[45]Id. at 3.

extensive GIS and land ownership research experience working as a senior fire dispatcher for the Alaska Fire Service[.]"[46]

In the spring of 2012, plaintiff applied for an Intelligence Assistant Position, a position to which plaintiff had been previously detailed, a detail which she successfully performed.[47] Tamala DeFries was the selecting official for this position.[48] Cheryl Van Der Horn was selected for the position. DeFries averred that Van Der Horn was selected "because she was the best qualified. Through her application and a strong interview, Cheryl demonstrated technical ability as well as solid communication skills, customer service and interpersonal skills which are an important part of and highly desirable in this position."[49] DeFries averred that through her interview, Van Der Horn "revealed an approach to customer service that highlighted strong communication skills, positive attitude, and people oriented[.]"[50] DeFries averred that plaintiff "showed competence in basic technical skills" and that in her interview she "emphasized technical aptitude rather than drawing attention to a balanced technical and interpersonal skillset that would include highlighting strong

_____

[46]Plaintiff Horschel Opposition [etc.] at 51, Docket No. 151.

[47]See, e.g., Exhibit 174 at 2, Docket No. 154-67.

[48]Affidavit of Tamala "Tami" DeFries, Exhibit 187 at 2, Docket No. 154-78.

[49]Id. at 5-6.

[50]Id. at 7.

-10-

communication skills, positive attitude, and people oriented."[51]  These averments are consistent with the statements DeFries made in a September 13, 2012 email to plaintiff.  In that email, DeFries explained that she selected Van Der Horn "because she was the best qualified.  Through her application and a strong interview, Cheryl demonstrated both technical ability as well as solid communication, customer service and interpersonal skills which are an important part of and highly desirable in this position."[52]  During a later EEOC interview, DeFries stated that

> Van Der Horn has lower technical skills, yet she has a more interactive approach to getting the job done; during the inter-view process, her customer service skills excelled.  [A] large part of the duties include communicating with AICC both in the interagency and Alaska region [and] phone and email communi-cation with the lower 48, NICC and . . . Ms. Van Der Horn had great networking skills.  [T]he complainant [plaintiff] excelled in her technical skills; but when trying to balance the complain-ant's technical skills, . . . during the interview process, [plaintiff] did not demonstrate the required interpersonal skills necessary for the position including the required communication skills.[[53]]

Mike Roos, one of the interview panel members, averred that after the interviews, he recommended that plaintiff be selected because he considered her "the best choice for the position."[54]  Roos averred that he thought plaintiff was as qualified as Van Der Horn "but had

---

[51]Id.

[52]Exhibit 192, Docket No. 154-84.

[53]Exhibit 191 at 13, Docket No. 154-83.

[54]Mike Roos Affidavit, Exhibit 194 at 4, Docket No. 154-86.

more dispatch background and experience in the job in question. . . ."[55]  This is consistent with DeFries' affidavit, in which she averred that "Mike Roos recommended the selection of [plaintiff] based on his opinion [that plaintiff] had a higher degree of technical ability as well as supporting education."[56]  DeFries averred that the other member of the interview panel, Ray Crowe, recommended that Van Der Horn be selected although he "recognized that both candidates were experienced in the position and both performed well in the past."[57]  There is, however, evidence in the record that after the interviews, Crowe had remarked that he was "pretty sure" that plaintiff was going to be selected.[58]

"The interview rating materials as well as all applicant information and materials" for the Intelligence Assistant position have been destroyed because, according to DeFries, "it is common routine for these materials to be destroyed given the personal information recorded within these documents."[59]  DeFries further testified that it has been her practice for over a decade to destroy interview notes after a selection was approved.[60]

---

[55]Id. at 5.

[56]DeFries Affidavit, Exhibit 187 at 9, Docket No. 154-78.

[57]Id.

[58]Exhibit 200 at 2, Docket No. 154-91.

[59]DeFries Affidavit, Exhibit 187 at 9, Docket No. 154-78.

[60]Videotape[d] Deposition of Tamala DeFries at 15:20-16:2, Exhibit 204, Docket No. 154-94.

-12-

Plaintiff contends that her qualifications for the Intelligence Assistant position were far superior to those of Van Der Horn. For example, Van Der Horn herself avers that plaintiff "possessed superior computer skills," and that she [Van Der Horn] had "not had CFFDRS or NFDRS training" at the time of the selection, training that plaintiff had.[61] Van Der Horn also avers that she "had not . . . received a detail or assignment to the National Interagency Coordination Center Intelligence Desk[,]"[62] but plaintiff had done such a detail. Plaintiff also points out that DeFries testified that she was aware that there had "been a few circumstances in which" Van Der Horn had been rude to people at AFS.[63]

Plaintiff alleges,[64] and defendant does not dispute, that plaintiff has "fully exhausted her administrative remedies regarding" her non-selection claims.

Plaintiff's non-selection claims fall into four categories: 1) Title VII disparate treatment claims, 2) Title VII retaliation claims, 3) Rehabilitation Act disparate treatment claims, and 4) Rehabilitation Act retaliation claims. Specifically, in her fourth amended complaint, plaintiff alleges that her non-selection for the Fire Coordination Officer and GIS Specialist positions constituted disparate treatment and that she was treated differently due

_____

[61]Affidavit of Cheryl Van Der Horn at 1, ¶¶ 2-3, Exhibit 202, Docket No. 154-93.

[62]Id. at ¶ 4.

[63]DeFries Deposition at 6:2-7, Exhibit 204, Docket No. 154-94.

[64]Fourth Amended Complaint at 23, ¶ 65, Docket No. 45.

-13-

to her race, national origin, color, and sex.[65]  Plaintiff alleges that her non-selection for the Intelligence Officer detail "constituted disparate treatment" and that she was treated differently due to her race, national origin, color, sex, and mental disability and in retaliation for her prior protected activity.[66]  Plaintiff alleges that her non-selection for the two LIE positions "constituted disparate treatment" and that she was treated differently due to her race, national origin, color, sex, mental disability, and in retaliation for her prior protected activity.[67]  And, plaintiff alleges that "she was subjected to discrimination" when she was not selected for the Intelligence Assistant position and that she was treated differently due to her race, national origin, color, mental disability, and in retaliation for her prior protected activity.[68]

Defendant now moves for summary judgment on plaintiff's non-selection claims.

## II.  Applicable Law

### A.  Summary Judgment Standard

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The initial burden is on the moving party to show that there is an absence of genuine issues of

---

[65]Id. at 5, ¶ 13.

[66]Id. at 7, ¶ 18.

[67]Id. at 19, ¶ 54.

[68]Id. at 21, ¶ 59.

-14-

material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  In deciding a motion for summary judgment, the court views the evidence of the non-movant in the light most favorable to that party, and all justifiable inferences are also to be drawn in its favor.  Id. at 255.  "'[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence.'"  Arandell Corp. v. Centerpoint Energy Services, Inc., 900 F.3d 623, 628–29 (9th Cir. 2018) (quoting T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987)).

### B.  Law Governing Title VII Disparate Treatment Claims

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1).  "'Disparate treatment' is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, or" sex.  Mangold v. Calif. Public Utilities Com'n, 67 F.3d 1470, 1474 (9th Cir. 1995) (citation omitted).  "To establish disparate treatment under Title VII, a plaintiff 'must offer evidence that gives rise to an inference of unlawful discrimination, either through

-15-

the framework set forth in McDonnell Douglas Corp. v. Green or with direct or circumstantial evidence of discriminatory intent.'" Freyd v. Univ. of Or., 990 F.3d 1211, 1228 (9th Cir. 2021) (quoting Vasquez v. County of Los Angeles, 349 F.3d 634, 640 (9th Cir. 2003)).

Under the McDonnell Douglas framework, plaintiff must first "make out a prima facie case." Weil v. Citizens Telecom Services Co., 922 F.3d 993, 1002 (9th Cir. 2019). To make out a prima facie case of discrimination, the plaintiff must show "that '(1) [s]he is a member of a protected class; (2) [s]he was qualified for h[er] position; (3) [s]he experienced an adverse employment action; and (4) similarly situated individuals outside h[er] protected class were treated more favorably.'" Freyd, 990 F.3d at 1228 (quoting Fonseca v. Sysco Food Servs. of Ariz., Inc., 374 F.3d 840, 847 (9th Cir. 2004)). "[A]n adverse employment action is one that materially affect[s] the compensation, terms, conditions, or privileges of . . . employment." Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008) (citation omitted). "The Ninth Circuit defines adverse employment actions broadly." Martinez v. Costco Wholesale Corp., 481 F. Supp. 3d 1076, 1091 (S.D. Cal. 2020). In the Ninth Circuit, an adverse employment action can include

> "a lateral transfer, or refusing a lateral transfer; undeserved negative performance evaluations or job references if motivated by retaliatory animus and not promptly corrected; being excluded from meetings, seminars and positions that would have made plaintiff more eligible for salary increases; being denied secretarial support; eliminating job responsibilities; and failure to be promoted or be considered for promotion."

Id. (quoting Shepard v. City of Portland, 829 F. Supp. 2d 940, 960 (D. Or. 2011)). "Although the requisite level of proof necessary for a plaintiff to establish a prima facie Title VII case at the summary judgment stage 'is minimal and does not even need to rise to the level of a preponderance of the evidence,' the plaintiff still must produce evidence, not just pleadings or argument." Weil, 922 F.3d at 1002 (quoting Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994)).

"Once the prima facie case is made, a presumption of unlawful discrimination is created and the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action." Id. (citation omitted). If the employer meets its burden "to articulate a legitimate, nondiscriminatory reason for its action[,]" then the burden shifts to plaintiff to "produce sufficient evidence to raise a genuine issue of material fact as to whether the employer's proffered nondiscriminatory reason is merely a pretext for discrimination." Dominguez-Curry v. Nev. Transp. Dep't, 424 F.3d 1027, 1037 (9th Cir. 2005). "[P]laintiff may show pretext either (1) by showing that unlawful discrimination more likely motivated the employer, or (2) by showing that the employer's proffered explanation is unworthy of credence because it is inconsistent or otherwise not believable." Id. "Ultimately, . . . plaintiff's burden is to 'produce some evidence suggesting that'" defendant's failure to select her for the positions in question "was due in part or whole to discriminatory intent.'" Id. (quoting McGinest v. GTE Service Corp., 360 F.3d 1103, 1123 (9th Cir. 2004)). Plaintiff may offer direct or circumstantial evidence to show pretext. Godwin v. Hunt Wesson, Inc.,

-17-

150 F.3d 1217, 1220-21 (9th Cir.1998). "When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." Id. at 1221. Circumstantial evidence, on the other hand "must be specific and substantial in order to create a triable issue with respect to whether the employer intended to discriminate. . . ." Id. at 1222 (citation omitted). Plaintiff "does not necessarily have to introduce additional, independent evidence of discrimination" at the pretext stage. Chuang v. Univ. of Calif, Davis, Bd. of Trustees, 225 F.3d 1115, 1127 (9th Cir. 2000) (citation omitted). "[A] disparate treatment plaintiff can survive summary judgment without producing any evidence of discrimination beyond that constituting his prima facie case, if that evidence raises a genuine issue of material fact regarding the truth of the employer's proffered reasons." Id. (emphasis added).

C.  Law Governing Title VII Retaliation Claims

"Title VII prohibits retaliation against any individual 'because [s]he has opposed any practice made an unlawful employment practice by this subchapter.'" Maner v. Dignity Health, 9 F.4th 1114, 1127 (9th Cir. 2021) (quoting 42 U.S.C. § 2000e-3(a)). "In a retaliation claim under Title VII, a 'plaintiff has the burden of proving a prima facie case of discrimination based on opposition to an unlawful employment practice.'" Kennedy v. Bremerton School Dist., 991 F.3d 1004, 1022 (9th Cir. 2021) (quoting E.E.O.C. v. Crown Zellerbach Corp., 720 F.2d 1008, 1012 (9th Cir. 1983)). "In order to establish a prima facie case of retaliation under Title VII," plaintiff "must demonstrate that (1) she engaged in an

-18-

activity protected under Title VII; (2) her employer subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." Thomas v. City of Beaverton, 379 F.3d 802, 811 (9th Cir. 2004). "In the Ninth Circuit, 'an adverse employment action is adverse treatment that is reasonably likely to deter employees from engaging in protected activity.'" Alozie v. Ariz. Board of Regents, 431 F. Supp. 3d 1100, 1115 (D. Ariz. 2020) (quoting Ray v. Henderson, 217 F.3d 1234, 1237 (9th Cir. 2000)). "[C]ausation may be established based on the timing of the relevant actions. Specifically, when adverse employment decisions are taken within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred." Passantino v. Johnson & Johnson Consumer Products, Inc., 212 F.3d 493, 507 (9th Cir. 2000). However, "[i]t is important to emphasize that it is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn." Porter v. California Dep't of Corrections, 419 F.3d 885, 895 (9th Cir. 2005) (citation omitted). If plaintiff makes out a prima facie case, "then McDonnell Douglas burden-shifting is appropriate." Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1064 (9th Cir. 2002).

### D. Law Governing Rehabilitation Act Disparate Treatment Claims

"[T]he Rehabilitation Act prohibits federal agencies from discriminating against disabled persons in employment matters, such as hiring, placement, or advancement." Jackson v. Napolitano, Case No. CV–09–1822–PHX–LOA, 2010 WL 94110, at *4 (D. Ariz.

-19-

Jan. 5, 2010) (citing 29 U.S.C. §§ 701 et seq.).  The McDonnell Douglas burden shifting

framework is applied to Rehabilitation Act disparate treatment claims.  McCoy v. Dep't of

Army, 789 F. Supp. 2d 1221, 1228-29 (E.D. Cal. 2011).  Under that framework, the plaintiff

first must make out a prima facie case of discrimination.  Id. at 1228.  "To state a prima facie

case under the Rehabilitation Act, a plaintiff must demonstrate that (1) she is a person with

a disability, (2) who is otherwise qualified for employment, and (3) suffered discrimination

because of her disability."  Walton v. U.S. Marshals Service, 492 F.3d 998, 1005 (9th Cir.

2007).  "Once [a plaintiff] has put forth her prima facie claim, the burden then shifts to the

[employer], which must [put] forward a legitimate, nondiscriminatory reason for its actions."

Kim v. Potter, 474 F. Supp. 2d 1175, 1186 (D. Hawai'i 2007).  "If the [employer] does so,

the burden shifts back to [the plaintiff] who must demonstrate that the [employer's] proffered

reason is pretextual. . . ."  Id.

        E.  Law Governing Rehabilitation Act Retaliation Claims

        Even if a plaintiff is "not disabled under the Rehabilitation Act," she may still be able

to pursue a retaliation claim under the Rehabilitation Act.  Coons v. Sec. of U.S. Dep't of

Treasury, 383 F.3d 879, 887 (9th Cir. 2004).  "Absent direct evidence of retaliation, the

McDonnell Douglas burden-shifting framework used for proving Title VII discrimination

claims applies" to Rehabilitation Act retaliation claims.  Miller v. Monroe School Dist., 159

F. Supp. 3d 1238, 1251 (W.D. Wash. 2016).  "First, the plaintiff must establish a prima facie

case of retaliation. . . ."  Id.  A prima facie case of retaliation requires a plaintiff to show "that

(1) he or she engaged in a protected activity; (2) he or she suffered a materially adverse [employment] action; and (3) there existed a causal connection between the protected activity and the adverse action." Id. (citing Brown v. City of Tucson, 336 F.3d 1181, 1187 (9th Cir. 2003)). Requesting a reasonable accommodation is protected activity. Coons, 383 F.3d at 887. "[C]ausation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." Villiarimo, 281 F.3d at 1065. "Once the plaintiff establishes a prima facie case, the employer has the burden to present legitimate reasons for the adverse employment action." Coons, 383 F.3d at 887 (citation omitted). "If the employer carries this burden, and plaintiff demonstrates a genuine issue of material fact as to whether the reason advanced by the employer was a pretext, then the retaliation case proceeds beyond the summary judgment stage." Id.

### III. Plaintiff's Claims

#### A. Fire Coordination Officer position

Plaintiff has asserted a Title VII disparate treatment claim based on her non-selection for the Fire Coordination Officer position. Plaintiff attempts to defeat defendant's motion for summary judgment on this claim via both means available to a Title VII plaintiff, by offering direct or circumstantial evidence of discrimination and under the McDonnell Douglas framework.

First, plaintiff argues that she has direct evidence of discrimination as to her non-selection for the Fire Coordination Officer position in the form of Eno-Hendren's statements

-21-

that plaintiff was a "'head down type'" and "'technically proficient'" but "'missing the rest.'"[69]  Plaintiff argues that these statements are direct evidence of Eno-Hendren's bias against Asians.  See Chin v. Runnels, 343 F. Supp. 2d 891, 907 (N.D. Cal. 2004) (citation omitted) (discussing "negative stereotypes that have long plagued Asian–Americans" such as "Asian Americans . . . have been described as nonassertive and deferential, intelligent but devious, and mathematically and technically oriented rather than verbally skilled").  Plaintiff insists that these statements show that Eno-Hendren used racial stereotypes to explain why she did not hire plaintiff for the Fire Coordination Officer position.

"Direct evidence is evidence 'which, if believed, proves the fact [of discriminatory animus] without inference or presumption.'"  Coghlan v. American Seafoods Co., 413 F.3d 1090, 1095 (9th Cir. 2005) (quoting Godwin, 150 F.3d at 1221).  "Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer."  Id.

The statements by Eno-Hendren are not direct evidence of a discriminatory motive on the part of Eno-Hendren because they were not clearly racist statements.  Rather, these statements are circumstantial evidence.  "Circumstantial evidence . . . is evidence that requires an additional inferential step to demonstrate discrimination."  Id.  These statements would require an additional inferential step to show that Eno-Hendren acted because of plaintiff's race, color, and/or national origin.  But, as circumstantial evidence, these

---

[69]SEALED Horschel Affidavit at 2, ¶ 4, Exhibit 16, Sparks Affidavit, Docket No. 152.

statements are sufficient to defeat defendant's motion for summary judgment on plaintiff's Title VII disparate treatment claim based on her non-selection for the Fire Coordination Officer position because they create an issue of fact as to whether Eno-Hendren was acting with discriminatory intent.

Plaintiff's Title VII disparate treatment claim based on her non-selection for the Fire Coordination Officer position would also survive defendant's motion for summary judgment under the burden shifting framework of McDonnell Douglas. Under that framework, plaintiff must first make out a prima facie case of discrimination, which plaintiff has done. There can be no dispute that plaintiff has established a prima facie case of race, color, and national origin discrimination as to the Fire Coordinator position. Plaintiff is Asian, brown, and Vietnamese. She applied for and was qualified for the position. Plaintiff experienced an adverse employment action when she was not selected for the position because the Fire Coordinator position was a full-time, non-seasonal job, which means, at the very least, that plaintiff's compensation would have increased had she been selected. And, the person who was selected, Shook, was a white, Caucasian individual.

Because plaintiff has made out a prima facie case, the burden shifts to defendant to articulate legitimate, non-discriminatory reasons for not selecting plaintiff. Eno-Hendren, the selecting official, averred that she "selected Ms. Shook" for the position because Shook

-23-

"had previous supervisory experience, and Ms. Horschel did not."[70] It is undisputed that the position description for the job listed "supervisory duties" as one of the major duties of the job.[71] Thus, defendant has articulated a legitimate, non-discriminatory reason for not selecting plaintiff.

The burden then shifts to plaintiff to show pretext. Here, the statements by Eno-Hendren, discussed above, are specific and substantial evidence of pretext. It is possible to infer from these statements that Eno-Hendren had a bias against Asians. If Eno-Hendren in fact made these statements, a reasonable jury could find them to be evidence of pretext.

In sum, plaintiff has come forward with sufficient evidence to create a triable issue of fact as to her Title VII disparate treatment claim based on her non-selection for the Fire Coordination Officer position. Defendant is not entitled to summary judgment on this claim.

B. GIS Specialist position

Plaintiff has asserted a Title VII disparate treatment claim based on her non-selection for the GIS Specialist position. Plaintiff attempts to defeat defendant's motion for summary judgment on this claim under the McDonnell Douglas framework.

Under this framework, plaintiff must first make out a prima facie case of discrimination. There is no dispute that plaintiff has established a prima facie case of race, color, national origin and sex discrimination as to the GIS Specialist position. Plaintiff is Asian,

_____

[70]Eno-Hendren Affidavit, Exhibit B at 3, Defendant's Motion for Summary Judgment, Docket No. 131.

[71]Exhibit VV, Defendant's Motion for Summary Judgment, Docket No. 131.

-24-

brown, Vietnamese and female. She applied for and was qualified for the GIS Specialist position. Plaintiff experienced an adverse employment action when she was not selected for this position because it was a full-time, non-seasonal job, which means that, at the very least, plaintiff's compensation would have increased had she been selected. And, the person who was hired, Griggs, was a white, Caucasian male.

Because plaintiff has made out a prima facie case, the burden shifts to defendant to articulate legitimate, non-discriminatory reasons for not selecting plaintiff. Fronterhouse, the selecting official, has stated that she did not select plaintiff because she did not have a college degree, while Griggs had a Master's degree in Geography, graduating with a 3.38 GPA,[72] and that "the only [GIS] experience Ms. Horschel indicated she had was that she had served as a GIS specialist in support of fire incidents, but she had never worked as a GIS Specialist as part of her regular job."[73] In contrast, Griggs "had worked for AFS on a detail in our GIS group, was a cartographic technician at the Alaska State Office dealing with maps and geography, which required similar skill sets and served an internship as a GIS Specialist with the National Parks Service."[74] Fronterhouse also stated that when she interviewed plaintiff during the second recruitment, plaintiff "had one of the lowest" interview scores,

---

[72]Fronterhouse Affidavit, Exhibit C at 3, Defendant's Motion for Summary Judgment, Docket No. 131. At other times, Fronterhouse inaccurately stated that Griggs had "a Master's Degree in GIS." Exhibit 28 at 1, Docket No. 153-29.

[73]Fronterhouse Affidavit, Exhibit C at 3, Defendant's Motion for Summary Judgment, Docket No. 131.

[74]Id.

-25-

and "was unable to adequately answer 4 of the 15 questions presented during her interview."[75]   These are legitimate, non-discriminatory reasons for the non-selection of plaintiff for the GIS Specialist position.

The burden then shifts to plaintiff to show evidence of pretext.   Plaintiff has come forward with specific and substantial evidence of pretext in the form of testimony from Hilary Rigby, one of interview panel members.   Rigby testified that Fronterhouse told her that she did not hire plaintiff for the GIS position because she did not think plaintiff would be a good "fit" for the group dynamic.[76]   A reasonable jury could find that this is evidence of pretext, given that Fronterhouse's working group was primarily Caucasians.   As defendant acknowledges, courts have found that statements about an employee not "fitting" in raise an inference of racial or other improper motivation.   See, e.g., Abrams v. Dep't of Public Safety, 764 F.3d 244, 253 (2nd Cir. 2014) ("the phrasing 'better fit' or 'fitting in' just might have been about race; and when construing the facts in a light most favorable to the non-moving party, those phrases, even when isolated, could be enough to create a reasonable question of fact for a jury").   Because plaintiff has come forward with sufficient evidence of pretext, defendant is not entitled to summary judgment on plaintiff's Title VII disparate treatment claim based on her non-selection for the GIS Specialist position.

---

[75]Id. at 3-4.

[76]Telephonic Deposition of Hilary Rigby at 34:1-14, Exhibit 29, Docket No. 153-30.

C.  Intelligence Officer detail

Plaintiff has asserted disparate treatment and retaliation claims under both Title VII and the Rehabilitation Act based on her non-selection for the Intelligence Officer detail. We begin with her Title VII disparate treatment claim.

Plaintiff's Title VII disparate treatment claim based on her non-selection for the Intelligence Officer detail fails as a matter of law because this was a temporary position, not a permanent position.  Plaintiff's not being selected for the 120-day Intelligence Officer detail had no material effect on her compensation, or the terms, conditions or privileges of her employment as a seasonal BLM employee in Galena.  Because this was a temporary detail, any changes in plaintiff's compensation[77] or the terms, conditions or privileges of employment had she been selected would have been temporary and thus could not be said to have <u>materially</u> affected her employment.  Defendant is entitled to summary judgment on plaintiff's Title VII disparate treatment claim based on her non-selection for the Intelligence Officer detail.

As for plaintiff's Title VII retaliation claim and her Rehabilitation Act claims, although defendant moved for summary judgment on all of plaintiff's claims, defendant made no argument on these claims in her opening brief.  Because defendant made no argument on these claims, defendant's motion for summary judgment on plaintiff's Title VII

---

[77]Plaintiff contends that the person who was selected received a temporary promotion to GS-9.  Exhibit 65, Docket No. 153-74.

retaliation and Rehabilitation Act claims based on her non-selection for the Intelligence Officer detail is denied because defendant did not meet her initial burden of showing that there were no genuine issues of material fact.

### D.  Two LIE positions

Plaintiff has asserted disparate treatment and retaliation claims under both Title VII and the Rehabilitation Act based on her non-selection for the two LIE positions. We begin with her Title VII disparate treatment claims.  Plaintiff attempts to defeat defendant's motion for summary judgment on her Title VII disparate treatment claims under the McDonnell Douglas framework.

Under this framework, plaintiff must first make out a prima facie case of discrimination.  There can be no dispute that plaintiff did not make out a prima facie case as to the DEU LIE position.  Eligibility for that position was limited to qualified veterans, which plaintiff was not.  Thus, defendant is entitled to summary judgment on plaintiff's Title VII disparate treatment claim based on her non-selection for the DEU LIE position.

As for the Merit System LIE position, there is no dispute that plaintiff has established a prima facie case of race, color, national origin, and sex discrimination.  Plaintiff is Asian, brown, Vietnamese, and female.  She applied for and was qualified for the position.  Plaintiff experienced an adverse employment action when she was not selected for this position because it was  a full-time, non-seasonal job, which means that, at the very least, plaintiff's

compensation would have increased had she been selected. And, the person who was hired, Hawkins, was a white, Caucasian male.

Because plaintiff has made out a prima facie case as to the Merit System LIE position, the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for not selecting plaintiff for this position. There is no evidence in the record from the selecting official as to why plaintiff was not interviewed or selected for this position presumably because Ross "is no longer employed by" the BLM and in 2012, when the EEOC was investigating these claims, "attempts to contact/locate her [were] unsuccessful."[78] Defendant contends that plaintiff was not selected to be interviewed or for the position because she was not one of the top candidates and because she did not have good communication skills. In support of this contention, defendant offers affidavits from the interview panel members stating that good communication skills, among other things, were a necessary part of the job. Deatherage, one of the panel members, averred that prior to participating in the interviews, Ross told her that she (Ross) "was looking for land status and/or resource use skills and strong customer service skills."[79] Stenroos, another panel member, averred that panel members "were asked to review applications and ascertain the top three to five candidates

---

[78]Exhibit TTT at 5, Defendant's Reply in Support of its Motion for Summary Judgment, Docket No. 165.

[79]Deatherage Affidavit, Exhibit FF at 3, Defendant's Motion for Summary Judgment, Docket No. 131.

-29-

who we felt had the best customer service and public contact background."[80] Stenroos further averred that plaintiff was not interviewed because "she did not make the list of the top candidates."[81] This evidence is sufficient to meet defendant's "minimal" burden of showing that plaintiff was not selected for an interview or for the position for a legitimate, non-discriminatory reason. Rezentes v. Sears, Roebuck & Co., 729 F. Supp. 2d 1197, 1205 (D. Hawai'i 2010).

The burden then shifts to plaintiff to show pretext. The only pretext argument that plaintiff makes is that she had superior qualifications for the job, but "an employee's subjective personal judgments of her competence alone do not raise a genuine issue of material fact" as to pretext. Bradley v. Harcourt, Brace and Co., 104 F.3d 267, 270 (9th Cir. 1996). Plaintiff's subjective belief that she was the superior candidate, by itself, is not specific and substantial evidence of pretext.

Here, there is not any other evidence of pretext. The reason plaintiff was not interviewed or selected was due in part to communication skills, which, as will be discussed below in detail, is a subjective criterion that can call into question the reasons given by an employer. But, the evidence presented by defendant as to why plaintiff was not interviewed or selected also shows that Ross' decision was based on land status and/or resource use skills, which are more objective skills than communication skills. As for the Merit System LIE

---

[80]Kenita Stenroos Affidavit, Exhibit FF at 17, Defendant's Motion for Summary Judgment, Docket No. 131.

[81]Id. at 18.

position, there is simply no evidence from which a reasonable jury could conclude that job skills were a proxy for discrimination.

Because plaintiff has not come forward with specific and substantial evidence of pretext, her Title VII disparate treatment claim based on her non-selection for the Merit System LIE position fails as a matter of law. Defendant is entitled to summary judgment on this claim.

As for plaintiff's Title VII retaliation claims, defendant made no argument on these claims in her opening brief. Because defendant made no argument on these claims, defendant's motion for summary judgment on these claims is denied because defendant did not meet her initial burden of showing that there were no genuine issues of material fact.

The same applies to plaintiff's Rehabilitation Act disparate treatment claims. Because defendant made no argument on these claims, defendant's motion for summary judgment on these claims is denied because defendant did not meet her initial burden of showing that there were no genuine issues of material fact.

As for plaintiff's Rehabilitation Act retaliation claims based on her non-selection for the two LIE positions, plaintiff contends that she was not hired for these two positions in retaliation for requesting a reasonable accommodation due to her mental disability. As for the DEU LIE position, plaintiff's Rehabilitation Act retaliation claim fails as a matter of law because "with regard to claims for retaliatory failure-to-hire, courts hold that a plaintiff must show that [s]he applied for an available job; and that [s]he was qualified for that position."

<u>Kucuk v. Central Wash. Univ.</u>, Case No. 17-1262JLR, 2018 WL 1570922, at *4 (W.D. Wash. March 30, 2018) (citation omitted). As discussed above, plaintiff was not qualified for the DEU LIE position. Thus, defendant is entitled to summary judgment on plaintiff's Rehabilitation Act retaliation claim based on her non-selection for the DEU LIE position.

As for the Merit Selection LIE position, plaintiff has made out a prima facie case of retaliation. There is no dispute that plaintiff engaged in protected activity by requesting a reasonable accommodation in May 2011. There is also no dispute that plaintiff was not selected for the Merit System LIE position, a position for which she was qualified. As for a causal link between the two, plaintiff "can establish causation by showing" that Ross, as the selecting official, "had knowledge that [p]laintiff had engaged in protected activity" and that "there is close proximity in time between the protected activity and the adverse employment action." <u>Aki v. Univ. of Calif. Lawrence Berkeley Nat'l Lab.</u>, 74 F. Supp. 3d 1163, 1182 (N.D. Cal. 2014) (citation omitted). Ross was aware of plaintiff's request for a reasonable accommodation because she was the supervisor of the temporary detail plaintiff was given in June 2011 as a result of plaintiff's reasonable accommodation request.[82] And the hiring decision was made in October 2011, which could constitute a close proximity.

As discussed above in connection with plaintiff's Title VII disparate treatment claim based on her non-selection for the Merit System LIE position, defendant has met its minimal

---

[82]Exhibit 73 at 2, Docket No. 153-82.

burden to articulate a legitimate, non-discriminatory reason for not selecting plaintiff for this position.

The burden then shifts back to plaintiff to show pretext. Plaintiff offers her affidavit dated January 6, 2012, as evidence of pretext. Plaintiff avers that

> Jekenia Ross approached me and asked me if I wanted to extend my detail at the Fairbanks District Office for 30 days during approximately July 2011. Ms. Ross stated that she was going to send an email to Kent Slaughter asking to extend my detail. I had to take sick leave and when I returned to work, Ms. Ross told me that she had changed her mind and was not going to request that my detail be extended due to my having taken sick leave.[83]

Plaintiff argues that Ross changing her mind due to plaintiff having to take sick leave because of her mental disability shows that Ross was biased against plaintiff due to her disability.

Plaintiff also argues that it is evidence of pretext that Ross originally had selected Melania Stober for the Merit System LIE position because Stober had qualifications similar to plaintiff's. Plaintiff argues that if Stober were Ross's first choice, then it follows that plaintiff should have been the second choice when Stober turned the position down, but for discrimination on the part of Ross.

---

[83]Horschel Affidavit by Interrogatories, Exhibit 101 at 12, Docket No. 153-110.

-33-

A reasonable jury could find the foregoing to be specific and substantial evidence of pretext. Thus, defendant is not entitled to summary judgment on plaintiff's Rehabilitation Act retaliation claim based on her non-selection for the Merit System LIE position.

E. Intelligence Assistant position

Plaintiff has asserted disparate treatment and retaliation claims under both Title VII and the Rehabilitation Act based on her non-selection for the Intelligence Assistant position. We begin with her Title VII disparate treatment claim. Plaintiff attempts to defeat defendant's motion for summary judgment on her Title VII disparate treatment claim under the McDonnell Douglas framework.

Under this framework, plaintiff must first make out a prima facie case of discrimination. There is no dispute that plaintiff has established a prima facie case of race, color, and national origin discrimination. Plaintiff is Asian, brown, and Vietnamese. She applied for and was qualified for the position. Plaintiff experienced an adverse employment action when she was not selected for the position because this was a full-time, non-seasonal job, which meant that, at the very least, plaintiff's compensation would have increased had she been selected. And, the person who was hired, Van Der Horn, was a white, Caucasian individual.

Because plaintiff has made out a prima facie case, the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for not selecting plaintiff. DeFries averred that Van Der Horn was selected "because she was the best qualified. Through her application and a strong interview, Cheryl demonstrated technical ability as well as solid

-34-

communication skills, customer service and interpersonal skills which are an important part of and highly desirable in this position."[84] DeFries averred that through her interview, Van Der Horn "revealed an approach to customer service that highlighted strong communication skills, positive attitude, and people oriented[.]"[85] DeFries averred that plaintiff "showed competence in basic technical skills" and that in her interview she "emphasized technical aptitude rather than drawing attention to a balanced technical and interpersonal skillset that would include highlighting strong communication skills, positive attitude, and people oriented."[86] DeFries further explained that

> [b]oth candidates had a customer service philosophy conducive to the position requirements. In the underlying tones of each candidate's oral presentation during the interview, [Van Der Horn] portrayed poise, tact, as well as a security in her answers to the questions throughout the interview process. [Plaintiff,] although [providing] tactful and mindful answers, portrayed a level of uncertainty in questions relative to customer service as there was minimum eye contact with the panel members. In the category of customer service, strong interpersonal skillsets and communication skills are critical for success. I was looking for a level of initiative in customer relations. [Van Der Horn] provided examples of applicable customer service team building experience that lead me to favor her skillset. I did not interpret that level of customer service present in the course of [plaintiff's] interview.[[87]]

---

[84] DeFries Affidavit, Exhibit 187 at 5-6, Docket No. 154-78.

[85] Id. at 7.

[86] Id.

[87] DeFries Affidavit, Exhibit LL at 10, Defendant's Motion for Summary Judgment, Docket No. 131.

These are non-discriminatory reasons for not selecting plaintiff for the Intelligence Assistant position.

The burden then shifts to plaintiff to show pretext. Plaintiff argues that it is evidence of pretext that DeFries used subjective criteria as the basis for her selection of Van Der Horn and non-selection of plaintiff. DeFries primarily selected Van Der Horn rather than plaintiff because Van Der Horn had better communication and customer service skills. As the Ninth Circuit has long held, "'subjective practices are particularly susceptible to discriminatory abuse and should be closely scrutinized.'" Warren v. City of Carlsbad, 58 F.3d 439, 443 (9th Cir. 1995) (quoting Sengupta v. Morrsion-Knudsen Co., 804 F.2d 1072, 1075 (9th Cir. 1986)). Here, plaintiff herself confirmed that she did not demonstrate good communication skills during her interview. Plaintiff has explained that she could not maintain eye contact during the interview because she had to use her notes when answering questions and that she had to use notes because her anxiety and depression made the interview "very stressful. . . ."[88] But, that does not change the subjective nature of the use of "communication skills" and "customer service skills" as criteria.

Plaintiff has also offered other evidence that she contends shows pretext. First, plaintiff points to the fact that DeFries did not independently draft the email she sent to plaintiff explaining why plaintiff was not selected. As set out above, DeFries sent plaintiff an email on September 13, 2012, explaining that she selected Van Der Horn "because she

---

[88] Horschel Affidavit at 3, ¶ 4, Docket No. 154-95.

was the best qualified. Through her application and a strong interview, Cheryl demonstrated both technical ability as well as solid communication, customer service and interpersonal skills which are an important part of and highly desirable in this position."[89]  At her deposition, DeFries testified that this language was provided to her by Helen Stewart, the Alaska BLM HR officer, who had consulted with the solicitor's office "to ensure we were providing a sound response" to plaintiff's inquiry as to why she was not selected for the position[.][90]  Plaintiff argues that because neither Stewart nor anyone at the solicitor's office were involved in the selection process, their involvement in drafting the reasons for plaintiff's non-selection suggest that the reasons given were pretext for discrimination.

No reasonable jury would conclude that this is evidence of pretext.  When plaintiff requested that DeFries "send [her] an email of the reason I was not selected for the position[,]"[91] DeFries sought advice from HR on how to respond.  Seeking such advice is not suspect.  As DeFries testified, she asked and received some "pointers" from Stewart "since I had never responded to a non-selection complaint" before.[92]  That DeFries asked HR for guidance does not raise an inference that DeFries' stated reason for not selecting plaintiff was pretext for discrimination.

---

[89]Exhibit 192 at 1, Docket No. 154-84.

[90]DeFries Affidavit at 30:3-31:15, Exhibit 204, Docket No. 154-94.

[91]Exhibit 192 at 1, Docket No. 154-84.

[92]DeFries Affidavit at 30:6-9, Exhibit 204, Docket No. 154-94.

-37-

Plaintiff also argues that it is evidence of pretext that the other two interview panel members (Crowe and Roos) both believed she was more than qualified for the position and that Van Der Horn herself admitted that plaintiff had superior computer skills and more experience. Plaintiff insists that her superior qualifications are sufficient evidence of pretext and emphasizes the fact that she had completed a successful six-month detail to the position and three six-week assignments to a national intelligence position and had authored articles which were published on the agency's website. In addition, plaintiff points to her GIS and fire experience and her experience working as the fire coordinator for the Galena zone for several months. Plaintiff argues that this "evidence of objectively superior qualifications" is sufficient to create a genuine issue of material fact as to pretext. Kalinoski v. Gutierrez, 435 F. Supp. 2d 55, 72 (D.D.C. 2006).

However, what others thought of plaintiff's skills, in particular her technical skills, is not evidence of pretext. In fact, there is no dispute that plaintiff's technical skills were superior to Van Der Horn's. But DeFries has articulated that Van Der Horn was selected because her communication and customer service skills were superior to plaintiff's, not because her technical skills were superior to plaintiff's.

Plaintiff also points to the evidence that Van Der Horn was known to be rude at times, which plaintiff argues undermines any contention that she was the "better qualified" candidate. However, no reasonable jury would find the fact that Van Der Horn was known to have been rude on a few occasions to be evidence of pretext. DeFries acknowledged that

Van Der Horn had been rude in "a few circumstances" but testified that Van Der Horn is generally "courteous and sensitive toward others[.]"[93] DeFries also testified that Van Der Horn admitted during her interview that she had been rude in the past and that she was working on this, which DeFries felt made Van Der Horn seem very "open and real" while plaintiff, during her interview, was "a little more closed, a little more non-communicative . . . and wasn't as forthcoming with that type of open, honest and communication process."[94] Thus, this is not evidence of pretext but rather is consistent with DeFries' stated reason for selecting Van Der Horn rather than plaintiff.

Plaintiff also makes a rather lengthy argument that the court should draw a negative evidentiary inference from the fact that DeFries destroyed the interview notes after plaintiff had raised concerns about her non-selection. See Talavera v. Shah, 638 F.3d 303, 312 (C.A.D.C. 2011) (in case involving similar destruction of interview notes, the court held that "[t]he spoliation inference must be considered along with Talavera's other admissible evidence regarding unlawful gender discrimination"). Plaintiff argues that the destruction of the notes creates an inference that the notes would not have supported DeFries' explanation for plaintiff's non-selection, which was largely based on plaintiff's interview performance.

---

[93]DeFries Affidavit at 5:12-6:7, Exhibit 204, Docket No. 154-94.

[94]Id. at 45:23-46:5.

-39-

The destruction of the interview notes is somewhat troubling, despite DeFries' testimony that this was her usual practice and that she had never been told that this practice was wrong.[95] As even defendant concedes, it was wrong of DeFries to destroy the interview notes, given that it was the BLM's policy that they should be kept for two years.[96] A negative evidentiary inference can be drawn from the destruction of the interview notes.

This inference, along with DeFries' use of subjective criteria, constitutes specific and substantial evidence of pretext. Thus, defendant is not entitled to summary judgment on plaintiff's Title VII disparate treatment claim based on plaintiff's non-selection for the Intelligence Assistant position.

Turning then to plaintiff's Title VII retaliation claim, although defendant made no argument in her opening brief as to plaintiff's Title VII retaliation claim, in her opposition, plaintiff argues that there are genuine issues of material fact as to whether she was not selected for this position due to retaliation. Defendant responded to this argument in her reply.

There is no dispute that plaintiff engaged in protected activity in May of 2011 when she filed an EEOC complaint. There is also no dispute that she suffered an adverse employment decision when she was not selected for the Intelligence Assistant position. As for the causal link, plaintiff contends that although DeFries averred that she did not learn of

---

[95]Id. at 16:1-10.

[96]Defendant's Reply in Support of its Motion for Summary Judgment at 56, Docket No. 165.

-40-

plaintiff's protected activity until after she had selected Van Der Horn for the position,[97] this averment should not be believed because the timing is "curious." By that, plaintiff explains that she means that it is curious that DeFries supposedly did not learn about plaintiff's protected activity until just after the selection announcement was made. Plaintiff also suggests that DeFries' story about when she learned of plaintiff's prior EEOC activity has changed. When being interviewed by the EEO counselor, DeFries was asked: "Were you aware the complainant had prior EEO Activity?"[98] DeFries responded

> yes; for clarification Ms. Defries stated, since getting this position, her supervisor Ken Slaughter informed her that all prior or pervious [sic] complaints would be handled by him; all new complaints would become her responsibility. Ms. Defries noted and stated, all prior complaints were not and have not been shared with her.[99]

DeFries stated that she became aware of plaintiff's prior EEOC activity via "Hallway Chatter" but that "nothing about the complainant['s] EEO matters was ever shared manager to manager regarding the prior EEO Activities."[100] Plaintiff argues that these statements to the EEO counselor are inconsistent with DeFries' later statements that she did not learn of plaintiff's EEO activity until after the selection for the Intelligence Assistant position was made. Plaintiff also contends that the causal connection is made here because the failed

---

[97]DeFries Affidavit, Exhibit 187 at 3, Docket No. 154-78.

[98]Exhibit 191 at 13, Docket No. 154-83.

[99]Id.

[100]Id. at 14.

-41-

mediation of her three prior EEO claims occurred just a month prior to the selection of Van Der Horn.

While there are questions of fact as to when DeFries learned about plaintiff's protected activity, the court will assume, for purposes of this order, that plaintiff has made out a prima facie case of Title VII retaliation. The burden would then shift to defendant to articulate a legitimate, non-discriminatory reason for not selecting plaintiff. As set out above in the discussion of plaintiff's Title VII disparate treatment claim, DeFries articulated legitimate, non-discriminatory reasons for not selecting plaintiff for the Intelligence Assistant position.

The burden would then shift to plaintiff to show pretext, and as discussed above, plaintiff has come forward with specific and substantial evidence of pretext. Thus, defendant is not entitled to summary judgment on plaintiff's Title VII retaliation claim based on her non-selection for the Intelligence Assistant position.

As for plaintiff's Rehabilitation Act disparate treatment claim, defendant made no argument on this claim in her opening brief. However, in her opposition, plaintiff argues that there are genuine issues of material fact as to this claim.

As for the first prong of her prima facie case, plaintiff argues that she was "regarded as" disabled by DeFries. The Rehabilitation Act provides protection to "both persons who are impaired and who are regarded as disabled." Sullivan By and Through Sullivan v. Vallejo City Unified School Dist., 731 F. Supp. 947, 958 (E.D. Cal. 1990). Plaintiff argues

-42-

that there is at least a question of fact as to whether she was "regarded as disabled" because there is evidence from which it could be inferred that DeFries had knowledge of plaintiff's medical condition in the form of plaintiff's repeated requests to participate in the leave share program. Plaintiff also points to evidence that Crowe, one of the interview panel members, knew of plaintiff's medical condition in 2010,[101] and she argues that it is reasonable to infer that Crowe shared this information with DeFries, as she was Crowe's acting supervisor.

There is no question of fact as to whether DeFries knew that plaintiff had a disability or impairment at the time of selection. DeFries has averred that she was not aware that plaintiff had a disability or impairment until October 17, 2012, when plaintiff sent her an email requesting a reasonable accommodation.[102] The evidence plaintiff has offered is not to the contrary. Thus, plaintiff has not made out her prima facie case. Defendant is entitled to summary judgment on plaintiff's Rehabilitation Act disparate treatment claim based on her non-selection for the Intelligence Assistant position.

As for plaintiff's Rehabilitation Act retaliation claim, plaintiff argues that there are questions of fact that would preclude summary judgment on this claim. As for her prima face case, it is not quite clear what protected activity plaintiff is relying on, but it appears to be that she had requested to participate in the leave share program. But, plaintiff has not offered any evidence that shows that DeFries knew plaintiff had requested to participate in the leave

---

[101]Horschel Affidavit at 7, Exhibit 206A, Docket 154-96.

[102]DeFries Affidavit, Exhibit LL at 4, Defendant's Motion for Summary Judgment, Docket No. 131.

share program. Thus, plaintiff has failed to make out a prima facie case. Defendant is entitled to summary judgment on her Rehabilitation Act retaliation claim based on her non-selection for the Intelligence Assistant position.

## IV. Conclusion

Defendant's motion for summary judgment on plaintiff's 2010, 2011, and 2012 non-selection claims is granted in part and denied in part as follows:

### A. Fire Coordination Officer position

Title VII disparate treatment claim – defendant's motion for summary judgment is denied.

### B. GIS Specialist position

Title VII disparate treatment claim – defendant's motion for summary judgment is denied.

### C. Intelligence Officer detail

Title VII disparate treatment claim – defendant's motion for summary judgment is granted.

Title VII retaliation claim – defendant's motion for summary judgment is denied.

Rehabilitation Act disparate treatment claim – defendant's motion for summary judgment is denied.

Rehabilitation Act retaliation claim – defendant's motion for summary judgment is denied.

-44-

### D. DEU LIE position

Title VII disparate treatment claim – defendant's motion for summary judgment is granted.

Title VII retaliation claim – defendant's motion for summary judgment is denied.

Rehabilitation Act disparate treatment claim – defendant's motion for summary judgment is denied.

Rehabilitation Act retaliation claim – defendant's motion for summary judgment is granted.

### E. Merit System LIE position

Title VII disparate treatment claim – defendant's motion for summary judgment is granted.

Title VII retaliation claim – defendant's motion for summary judgment is denied.

Rehabilitation Act disparate treatment claim – defendant's motion for summary judgment is denied.

Rehabilitation Act retaliation claim – defendant's motion for summary judgment is denied.

### F. Intelligence Assistant position

Title VII disparate treatment claim – defendant's motion for summary judgment is denied.

Title VII retaliation claim – defendant's motion for summary judgment is denied.

-45-

Rehabilitation Act disparate treatment claim – defendant's motion for summary judgment is granted.

Rehabilitation Act retaliation claim – defendant's motion for summary judgment is granted.

DATED at Anchorage, Alaska, this <u>26th</u> day of May, 2022.

/s/   H. Russel Holland
United States District Judge
